Keely E. Duke
ISB# 6044; ked@dukescanlan.com
Kevin A. Griffiths
ISB# 8187; kag@dukescanlan.com
**DUKE SCANLAN & HALL, PLLC**
P.O. Box 7387
Boise, Idaho 83707
Telephone: (208) 342-3310
Facsimile: (208) 342-3299

Mark B. Conlan (ISB #9028)
Michael F. Quinn (admitted *pro hac vice*)
Christopher Walsh (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500

*Counsel to James R. Zazzali, Trustee for the
DBSI Estate Litigation Trust*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| JAMES R. ZAZZALI, as Trustee for the Debtors' Jointly-Administered Chapter 11 Estates and/or as Litigation Trustee DBSI Estate Litigation Trust,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS L. SWENSON, et al.<br><br>　　　　　　Defendants. | No. 1:13-cv-00086-MJP<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S SECOND MOTION FOR ORDER GRANTING FINAL JUDGMENT ON DEFAULT AGAINST DEFENDANT DOUGLAS L. SWENSON** |

　　　　Plaintiff James R. Zazzali, as trustee (the "Trustee") for the DBSI Estate Litigation Trust (the "ELT"), respectfully submits this memorandum of points and authorities in support of his Second Motion for Entry of Judgment on Default against Defendant Douglas L. Swenson

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S
MOTION FOR ORDER GRANTING FINAL JUDGMENT - 1**

("Swenson").  For the reasons set forth below, the Trustee respectfully requests that the Motion be granted and that judgment be entered against Swenson in favor of James R. Zazzali, as Trustee of the ELT avoiding, preserving, and recovering certain transfers in the amount of $18,640,387.59, or the value of such transfers, and adjudging Swenson liable to the Trustee in the amount of $18,640,387.59.  The Trustee further requests that the judgments be certified as final pursuant to Fed. R. Civ. P. 54(b), made applicable here by Fed. R. Bankr. P. 7054.

## STATEMENT OF FACTS

**A.     DBSI Bankruptcy Cases**

Beginning on November 10, 2008, ("Petition Date"), DBSI Inc. and certain of its affiliates (the "Debtors") each filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101 - 1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On April 14, 2009, the Bankruptcy Court approved the appointment of an Examiner.  The Examiner issued interim and final reports on August 3, 2009 and October 19, 2009, respectively, certain portions of which reports are set forth in the Trustee Second Amended Complaint in this action.

By order dated October 26, 2010 [Bankr. D. Del., Case No. 08-12687, Doc. No. 5924] (the "Confirmation Order"), the Bankruptcy Court confirmed the Second Amended Joint Chapter 11 Plan of Liquidation [Bankr. D. Del., Case No. 08-12687, Doc. No. 5699] (the "Plan"), resulting in the appointment of James R. Zazzali as Trustee for the ELT.

As the Confirmation Order sets forth in greater detail, DBSI Inc. and its affiliates were operated as a single enterprise under the control of a small group of insiders, including defendant Douglas L. Swenson. [Confirmation Order, ¶ 27].

B.   **The Criminal Case**

On May 17, 2013, a federal grand jury sitting in this District returned a Superseding Indictment against Swenson, among other DBSI insiders. [*See* D. Idaho Case No. 13-cr 00091-BLW, Doc. Nos. 21 & 21-1].

A trial was held and on April 14, 2014, the Jury returned guilty verdicts against Swenson on 44 counts of securities fraud, finding that Swenson used a device or scheme to defraud someone, made an untrue statement of a material fact or failed to disclose a material fact that resulted in making the Debtors' statements misleading, and engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon any person. [*Id.*, Doc. Nos. 501 and 502]. Additionally, Swenson was convicted on 34 counts of wire fraud. All 34 wire frauds counts alleged "a scheme and artifice" for obtaining money and property . . ." Superseding Indictment [*Id.*, Doc. Nos. 21 & 21-1]. The Jury specifically found that Swenson used a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. [*Id.*, Doc. No. 502.[1]].

On August 20, 2014, Swenson was sentenced to terms of imprisonment of 240 months. [*Id.*, Doc. No. 723].

C.   **The Insider Avoidance Action**

By complaint filed on November 5, 2010, the Trustee commenced this adversary proceeding against Swenson, other insiders, and certain taxing authorities in the Bankruptcy Court. [Bankr. D. Del., Adv. Proc. No. 10-54649, Doc, No. 1]. On November 10, 2010, the Trustee filed a First Amended Complaint. [*Id.*, Doc. No. 3]. On February 22, 2011, the Trustee

---

[1] Although Swenson's appeal of his criminal conviction is pending, the jury's verdict remains a final judgment for purposes of claim and issue preclusion. *Hawkins v. Risley*, 984 F. 2d. 321, 324 (9th Cir. 1993) ("[I]n federal courts. . . . the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided"); *Wedbush, Noble, Cooke, Inc. v. S.E.C.*, 714 F.2d 923, 924 (9th Cir. 1983) ("It is fundamental that the mere pendency of an appeal does not, in itself, disturb the finality of a judgment.")

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S MOTION FOR ORDER GRANTING FINAL JUDGMENT - 3**

filed his Second Amended Complaint in this action, which remains the operative pleading [*id*., Doc. No. 33] (the "SAC").

By the SAC, the Trustee seeks (i) to avoid transfers made to or for the benefit of Swenson pursuant to sections 108, 544(b), 546, 547, 548 of the Bankruptcy Code, and Idaho Code Ann. sections 55-906, 55-913, 55-914, and 55-916; (ii) to preserve and recover such transfers, or the value of such transfers pursuant to sections 550(a)(1) and 551 of the Bankruptcy Code and Idaho Code Ann. section 55-917; and (iii) for relief under other applicable statutory and common law theories of avoidance and recovery.

In the Delaware Bankruptcy Court's Memorandum Opinion [*id.* Doc. No. 97] ("Judge Walsh's Memorandum Opinion") denying Swenson's motion to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) [*id*., Doc. No. 42] ("Swenson's MTD"), Judge Walsh summarized the Trustee's claims against Swenson as follows:

> Trustee's Second Amended Complaint […] alleges that, during the four years prior to DBSI's bankruptcy, Swenson received over $42 million from the DBSI enterprise, in the form of cash payments or tax payments made on his behalf. (Doc. No. 33, ¶¶ 482-83). The 208-page Complaint contains hundreds of paragraphs describing how the DBSI enterprise allegedly worked to defraud investors. (Id., ¶¶ 47-394.)  The Complaint alleges that "[w]hatever its original business plan may have been, for many years DBSI had come loose from and operated unattached from any rational economic moorings, and ultimately became nothing more than the instrument of the Insiders' elaborate pyramid or 'Ponzi' scheme to defraud Investors." (Id. at ¶ 47.)  It further alleges that "[t]he entire enterprise was operated as a fraud on investors and as the alter ego of Swenson." (Id. at ¶ 49.)

> Among the Complaint's numerous allegations concerning accounting fraud and misuse of investor funds is an allegation, based on the court-appointed bankruptcy examiner's report, that "[a] small group of management personnel, including Douglas Swenson, regularly tracked cash on a global basis and directed that investor funds be used to meet pre-existing obligations and operating expenses by evading restrictions governing the use of investor funds." (Id. at ¶ 50.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S MOTION FOR ORDER GRANTING FINAL JUDGMENT - 4**

> The Complaint alleges in detail the transfers made to Swenson (id., ¶¶ 482-486), and Exhibit A to the Complaint contains a 13-page spreadsheet listing transfers made to Swenson in the four years prior to DBSI's bankruptcy, including the following information for each transfer: the date of the transfer, the identity of the transferor, the type of transfer (distribution to Swenson or a tax payment), amount of transfer, and, for the tax payments, the identity of the taxing authority.
>
> Trustee seeks to recover these transfers as actual fraudulent transfers (Counts 1, 4, and 7 of the Complaint) and constructively fraudulent transfers (Counts 2, 3, 5, and 6 of the Complaint), under section 548 of the Bankruptcy Code, 11 U.S.C. § 548, and relevant Idaho statutes, Idaho Code Ann. §§ 55-906, 55-913, 55-914, 55-916, and 55-917.

[Judge Walsh's Memorandum Opinion at 2-4]. In denying Swenson's MTD, Judge Walsh found that the trustee had adequately pleaded fraud in connection with the transfers made to or for the benefit of Swenson and said that "it is well-established that 'where a Ponzi scheme exists, there is a presumption that transfers were made with the intent to hinder, delay and defraud creditors.'" [*Id.* at 9].

By Order dated February 8, 2013, this adversary proceeding was transferred to this Court on Defendant Swenson's motion. [D. Del. Bankr., Adv. Pro. No. 10-54649 (PJW), Doc. No. 312)]. By Order entered on December 5, 2013, this Court withdrew the reference of this adversary proceeding to the bankruptcy court. [Doc. No. 91]. On the same day, this Court stayed this adversary proceeding until 10 (ten) days after a verdict was reached in the criminal case [Doc. No. 90], which verdict was returned on April 14, 2014. On May 30, 2014, on motion of the United States, this Court extended the stay until ten days after the United States interlocutory appeal. [Doc. No. 116]

Notwithstanding the entry of a stay, on July 16, 2014, this Court granted Swenson's counsel's motion to withdraw in this adversary proceeding. [Doc. No. 121]. As required by Local Civil Rule 83.6 (c)(2), the Court's Order required that, within twenty-one (21) days after

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S MOTION FOR ORDER GRANTING FINAL JUDGMENT - 5**

the filing of proof of service of the Order on Douglas Swenson, he was to "advise the Court in writing in what manner he will be represented." [Doc. No. 121, at 2]. As also required by the same Local Rule, the Court's Order further provided, "If Defendant Douglas L. Swenson fails to appear in the action, either in person or through a newly appointed attorney within such twenty-one (21) day period, such failure will be sufficient grounds for the entry of a default against such party or dismissal of the action of such party with prejudice and without further notice . . ." [*Id*.].

On September 29, 2014, with Swenson having missed that deadline, the Clerk of the Court entered default against Swenson. [Doc. No. 127]. Therefore, on January 12, 2015, Plaintiff filed a Motion for Order Granting Final Judgment on Default Against Defendant Douglas Swenson. [Doc. No. 128]. The Court denied the motion because the matter had been subject to a stay when default was entered and also vacated the default that had been entered by the Clerk. [Doc. No. 131]. The Court's order denying the motion for default judgment also required Douglas Swenson to advise the Court within 21 days of the lifting of the stay in what manner he will be represented and authorized Plaintiff to again move for entry of default if Douglas Swenson failed to do so. [*Id*.]

The Court lifted the stay on April 8, 2015. [Doc. No. 133]. The Order Lifting Stay again provided that if Douglas Swenson "fails to appear in the action, either in person or through a newly appointed attorney on or before May 1, 2015, Plaintiff may then move for entry of default." *Id*. Swenson failed to appear by the May 1, 2015 deadline. On May 4, 2015, Plaintiff requested Entry of Default, and default was entered against Swenson on May 5, 2015. [Doc. Nos. 139, 140]

## ARGUMENT

Pursuant to Fed. R. Civ. P. 55, made applicable here by Fed. R. Bankr. P. 7055, a court may enter a default judgment against a party that fails to defend an action. Fed. R. Civ. P. 55(b). Obtaining a default judgment under Rule 55 is a two-step process. *See, e.g.*, *Eitel v. McCool*,

782 F.2d 1470, 1471 (9th Cir. 1986). First, a party must obtain an entry of default under Rule 55(a); then that party may seek an entry of judgment under either Rule 55(b)(1) or Rule 55(b)(2), depending on the circumstances. If the defaulting party has entered an appearance, entry of judgment from the district court must be sought under Rule 55(b)(2). *See id*. ("Because of McCool's appearance, the district court, not the clerk, was required to enter the default judgment.").

The district court's decision whether to enter a default judgment is a discretionary one. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Semmaterials, L.P. v. Alliance Asphalt, Inc.*, Case No. 05-cv-320, 2007 U.S. Dist. LEXIS 5613, at *10 (D. Idaho Jan. 25, 2007) ("The decision whether to enter a default judgment under Federal Rule of Civil Procedure 55(b)(2) rests in the sound discretion of [the trial court]."). When exercising its discretion to award a default judgment, a district court in the Ninth Circuit must consider the following seven factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

In the present matter, the Trustee's motion for default judgment satisfies all seven *Eitel* factors. Without a judgment, the Trustee would be prejudiced because he "will likely be without other recourse for recovery," *Pepsico, Inc. v. Cal. Sec. Cans*, 283 F. Supp. 2d 1127, 1177 (C.D. Cal. 2002), for a substantial portion of the amount to which the Trustee is entitled. While the Trustee may still recover from certain taxing authorities, which directly received some of the transfers at issue, Swenson was the direct beneficiary of more than $3.5 million of the challenged

transfers and thus is the primary target for recovering those funds. Regarding the second and third *Eitel* factors there is no serious question as to the merits of the Trustee's claims or the sufficiency of the SAC, given that the Trustee's complaint has already survived a motion to dismiss [Doc. Nos. 97 and 98] and Swenson has been convicted of multiple crimes arising out of the same set of underlying facts.

The fourth *Eitel* factor also supports entry of a default judgment. When considering the amount of money at stake, the court must assess whether the recovery sought is proportional to the harm caused by the defendant's conduct. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). The relief sought here is the avoidance and recovery of the Transfers—or the value of such Transfers—dollar for dollar. In light of the significant harm suffered by thousands of investors as a result of Swenson's massive fraudulent enterprise, the recovery sought by the Trustee is certainly proportional. Indeed, in the parallel criminal proceeding, Judge Winmill found that in 2007 and 2008 alone, DBSI obtained over $200 million of investor money on account of Swenson's scheme. [*United States v. Swenson*, 13-00091, Doc. No. 654, at 15].

The remaining *Eitel* factors also support entry of a default judgment. Because default has been entered, the well-pleaded factual allegations of the SAC are taken as true. Given the sufficiency of the Trustee's complaint, and the related criminal conviction, no genuine dispute of material facts would preclude granting the Trustee's motion for default judgment. Swenson's failure to defend was not due to excusable neglect because he was permitted sufficient time to notify the court of his intentions for defending this matter, yet has failed to do so. Lastly, although the Federal Rules of Civil Procedure favor decisions on the merits, the existence of Rule 55(b) indicates that default judgments are appropriate in some instances, such as the present

circumstances in which Swenson's failure to defend "makes a decision on the merits impractical, if not impossible." *Pepsico*, 238 F. Supp. 2d at 1177.  Moreover, as previously noted, Swenson's criminal conviction resolves any doubt about the merits.

I.      **Swenson's Liability Was Established by the Entry of Default**

The default entered by the clerk on September 29, 2014, conclusively establishes Swenson's liability as to each and every count in the SAC, but not the amount of damages.  *See, e.g.*, *Garamendi v. Henin*, 683 F.3d 1069, 1074 (9th Cir. 2012) ("[T]he entries of default established liability, but not the amount of damages . . . .").  Because default has been entered against Swenson, the well-pleaded allegations in the SAC are deemed proven, except for those relating to damages.  *See, e.g.*, *Fair Hous. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *Semmaterials*, 2007 U.S. Dist. LEXIS 5613, at *10 ("Once a default has been entered, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.") (internal quotation marks and citation omitted).

Therefore, Swenson's liability as to all counts in the SAC is established, and the Trustee need only demonstrate the amount of damages in order to obtain a judgment.

II.     **No Evidentiary Hearing Is Required Because the Amount of Damages Is Capable of Mathematical Calculation**

"Once default is entered, injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Semmaterials*, 2007 U.S. Dist. LEXIS 5613, at *11 (internal quotation marks and citation omitted).  In the context of a motion for default judgment, a plaintiff's burden in proving damages is "relatively lenient."  *See, e.g.*, *id.* at *10-11 ("The plaintiff is required to prove all

damages sought, but his burden in doing so, in this context, is relatively lenient.") (internal quotation marks and citation omitted). "When determining damages, the Court can rely on affidavits submitted by the plaintiff or order a full evidentiary hearing." *Id*. at 11 (citation omitted). "While the district court has the discretion to hold an evidentiary hearing, it should not do so if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material facts." *Kashin v. Kent*, 457 F.3d 1033, 1043 (9th Cir. 2006). "Entry of a default judgment for money is appropriate without a hearing if 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *WPM, Inc. v. Full Pro Indus. Co.*, No. 94-55447, 1995 U.S. App. LEXIS 9694, at *4 (9th Cir. Apr. 26, 1995) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (no hearing necessary when documents show that the judgment amount is based upon a definite figure)).

The present matter is highly appropriate for resolution without an evidentiary hearing inasmuch as the matter seeks the avoidance and recovery of certain specific transfers of money. Thus, the judgment amount is "capable of mathematical calculation" and "based upon a definite figure," because it can be determined by simply summing up the transfers made to or for the benefit of Swenson.

### A.   The ELT Is Entitled to Judgment Avoiding and Recovering Transfers in the Amount of $18,640,387.59 on Count 4-7 of the SAC.

Counts 4-7 of the SAC seek to avoid and recover the value of certain transfers made during the four-year period before the Petition Date in the amount of $18,640,387.59 (the "<u>Swenson Four-Year Transfers</u>") by one or more of the Debtors, to or for the benefit of Swenson, as (i) actual fraudulent transfers pursuant to sections 544(b), 550(a) and 551 of the Bankruptcy Code, and Idaho Code Ann. sections 55-906, 55-913(a) and (b), 55-914(1), 55-916, 55-917. To reduce the burden on the Court and the Estate, the accompanying Declaration of

Matthew McKinlay provides evidence of a subset of the transfers, which subset totals $18,640,387.59, and the Trustee seeks final judgment against Swenson in that amount. The Trustee continues to maintain that *all* of the Swenson Four Year Transfers are fraudulent and may be avoided and recovered from appropriate parties under applicable law.

Accordingly, the Trustee requests that judgment be entered in favor of James R. Zazzali, as Trustee for the DBSI Estate Litigation Trust and against Douglas Swenson avoiding the Swenson Four-Year Transfers and adjudging Douglas Swenson liable to the Trustee in the amount of $18,640,387.59.[2]

### B. The ELT is Entitled to Judgment Finding that Swenson Was Unjustly Enriched by the Swenson Four-Year Transfers and Ordering Swenson to Make Restitution to the Trustee in the Amount of the Swenson Four-Year Transfers

Count 8 of the SAC also alleges that Swenson was unjustly enriched by virtue of the Swenson Four-Year Transfers and seeks restitution of these transfers. Therefore, the final judgment should also order Swenson to make restitution for the transfers identified in Mr. McKinlay's Declaration, totaling $18,640,387.59.

### III. A Constructive Trust Should Be Imposed Over the Funds Paid Directly to Swenson.

In the Eighth Count of the SAC, the Trustee alleges unjust enrichment against Swenson. Equitable relief can also be obtained via a default judgment. *See, e.g.*, *Pepsico*, 238 F. Supp. 2d at 1177 (stating that default judgment was favored under the *Eitel* factors because the plaintiffs were only seeking injunctive relief, not monetary damages); *C&M Inv. Grp., Ltd. v. Campbell*, 448 Fed. Appx. 902, 906 (11th Cir. 2011) (affirming the District Court's entry of default

---

[2] Counts 1-3 seek a portion of the relief sought in Counts 4-7. Counts 1 and 2 seek the avoidance and recovery of all the transfers to or for the benefit of Swenson in the two years preceding the Petition Date, and Count 3 seeks the avoidance and recovery of such transfers from just one of the Debtors, DBSI Investments, L.P. Since the relief sought in Counts 4-7 completely subsumes the relief sought in Counts 1-3, the Court need not consider Count 1-3 at this time.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S MOTION FOR ORDER GRANTING FINAL JUDGMENT - 11**

judgment and grant of a constructive trust and stating that plaintiffs' "entitlement to that equitable relief was demonstrated when the [defendants] conceded the truth of the well-pleaded allegations" in the plaintiffs' complaint). Only the court under Rule 55(b)(2), as opposed to the clerk under Rule 55(b)(1), may enter a default judgment when equitable relief is sought as a remedy. *See, e.g.*, *CFTC v. Brickell Key Fin., LLC*, Case No. 04-cv-22549, 2006 U.S. Dist. LEXIS 97093, at *3 (S.D. Fla. July 14, 2006) ("Because the Complaint in this case seeks injunctive and other equitable relief, in addition to a sum certain, the CFTC seeks entry of judgment by the Court pursuant to FRCP 55(b)(2)."). When a plaintiff's complaint contains sufficient well-pleaded allegations to state a claim for equitable relief, a district court may enter default judgment. *U.S. v. Kahn*, 164 Fed. Appx. 855, 858 (11th Cir. 2006); *see also U.S. v. Hempfling*, 385 Fed. Appx. 766 (9th Cir. 2010) (affirming the district court's entry of default judgment and grant of plaintiff's request for equitable relief); *SEC v. Small Cap Research Grp.*, 226 Fed. Appx. 656 (9th Cir. 2007) (same).

As the Trustees alleges on behalf of the ELT in the Eight Count of the SAC, Swenson was unjustly enriched when he received the transfers identified in the McKinlay Declaration. The transfers identified in Exhibit A were made directly to Swenson (as opposed to transfers made for his benefit). Therefore, a constructive trust should be imposed, *nunc pro tunc*, over all funds that were the subject of the transfers identified on Exhibit A.

**IV.    This Judgment Should Be Certified As Final**

Fed. R. Civ. P. 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Because there is no just reason for delay in the present matter, the Trustee requests, in addition to the default judgment against Swenson, that this Court enter a

Rule 54(b) certification certifying this default judgment as final, so that Trustee may immediately enforce the judgment.

In making a determination under Rule 54(b), "[a] district court must first determine that it is dealing with a 'final judgment.'" *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id*. (quoting *Sears, Roebuck*, 351 U.S. at 436). "Once having found finality, the district court must go on to determine whether there is any just reason for delay." *Id*. at 8. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal," which is to be "exercised 'in the interest of sound judicial administration.'" *Id.* (quoting *Sears, Roebuck*, 351 U.S. at 435, 437).

In deciding whether there is "no just reason for delay" of an individual final judgment, "a district court must take into account judicial administrative interests as well as the equities involved." *Id.* Consideration of "judicial administrative interests" is "necessary to assure that application of [Rule 54(b)] effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id*. (quoting *Sears, Roebuck*, 351 U.S. at 438). Here, inasmuch as Swenson has defaulted by failing to appear, there is no risk of an appeal of a judgment against Swenson and, therefore, no risk of "piecemeal appeals."

In addition, the equities involved support the entry of a Rule 54(b) certification. If the default judgments are not certified as final, the Trustee will very likely be prejudiced in collection efforts in comparison to other creditors. Many of Swenson's creditors have already

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S MOTION FOR ORDER GRANTING FINAL JUDGMENT - 13**

obtained judgments against him and are pursuing post-judgment discovery and collection procedures.  *See, e.g.*, *Swenson v. Bushman Investment Properties, Ltd.*, Case No. 10-cv-00175, 2013 U.S. Dist. LEXIS 104002 (D. Idaho July 22, 2013) (entering final judgment on arbitration award).  Moreover, in proceedings in Swenson's criminal matter, *United States v. Swenson*, Case No. 13-cr-00091 (D. Idaho), Swenson's counsel argued that the Trustee's lack of a judgment renders inferior the Trustee's claims against the assets seized by the United States.  Therefore, in order to preserve the Trustee's right to collect on the judgments entered against Swenson for the benefit of the thousands of defrauded DBSI investors, this Court should certify these default judgments as final pursuant to Rule 54(b).

## CONCLUSION

For the foregoing reasons, the Trustee's Motion should be granted for the reasons set forth in the memorandum of points and authorities and the Declaration of Matthew R. McKinlay in Support of Plaintiff Trustee's Second Motion for Entry of Final Judgments on Default Against Defendant Douglas L. Swenson filed concurrently herewith.

Dated: May 8, 2015

/s/ Keely E. Duke
Keely E. Duke
ISB# 6044; ked@dukescanlan.com
Kevin A. Griffiths
ISB# 8187; kag@dukescanlan.com
**DUKE SCANLAN & HALL, PLLC**
P.O. Box 7387
Boise, Idaho 83707
Telephone: (208) 342-3310
Facsimile: (208) 342-3299

Mark B. Conlan (ISB #9028)
Michael F. Quinn (admitted *pro hac vice*)
Christopher Walsh (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500

*Counsel to James R. Zazzali, Trustee for the
DBSI Estate Litigation Trust*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S
MOTION FOR ORDER GRANTING FINAL JUDGMENT - 14**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of May, 2015, I electronically filed the foregoing document with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

| | |
|---|---|
| Ari David Kunofsky | ari.d.kunofsky@usdoj.gov, eastern.taxcivil@usdoj.gov |
| Brett S. Theisen | btheisen@gibbonslaw.com |
| Carolyn Graff Wade | carolyn.g.wade@doj.state.or.us, karen.vincent@doj.state.or.us |
| Christopher Walsh | cwalsh@gibbonslaw.com |
| Craig Gerald Taylor | cgtaylor@stm-law.com |
| David D. Lennon | dlennon@ncdoj.gov |
| Donn D. Rosenblum | donn.rosenblum@ohioattorneygeneral.gov |
| F. Mark Bromley | bromleyfm@doj.state.wi.us, gurholtks@doj.state.wi.us |
| George Robert Brown | george.brown@tax.idaho.gov, legalpleadings@tax.idaho.gov |
| Heather L. Donald | donaldh@michigan.gov |
| James B. Holden | james.holden@state.co.us |
| James C. Jacobsen | jjacobsen@nmag.gov |
| James M. Woodruff | jim.woodruff@nebraska.gov, nick.kucirek@nebraska.gov |
| John Edward Waters | john.waters@iowa.gov |
| Keely E. Duke | ked@dukescanlan.com, klb@dukescanlan.com, sls@dukescanlan.com |
| Kevin Alan Griffiths | kag@dukescanlan.com, klb@dukescanlan.com |
| Kimberly Cygan | kim.cygan@azag.gov |
| Mark Barry Conlan | mconlan@gibbonslaw.com |
| Michael F. Quinn | mquinn@gibbonslaw.com |
| Monte N. Stewart | stewart@stm-law.com, dbower@stm-law.com, sarah.paralegal@yahoo.com, tkildow@stm-law.com |
| Randall J. Wharton | randall.wharton@kdor.ks.gov |
| Randall S. Barnum | randall@barnumlaw.com, stacie@barnumlaw.com |
| Robin J. Leigh | rleigh@law.ga.gov |
| Samuel I. Portnoy | sportnoy@gibbonslaw.com |
| Stacy J. McNeill | smcneill@btjd.com, AmberEllis@btjd.com, docketing@btjd.com |
| Stephen W. Lewis | slewis@utah.gov |
| Steven A. Ginther | id@dor.mo.gov |
| Tasha B. Thompson | thompst@sctax.org |
| Thomas A. Knowlton | thomas.a.knowlton@maine.gov, amy.oliver@maine.gov |
| Todd M. Bailey | Todd.Bailey@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov |

The foregoing document was served via U.S. Mail on the following recipients:

| | |
|---|---|
| Douglas L. Swenson | 2227 Trestle Drive<br>Meridian, ID 83646 |

/s/Keely E. Duke
Keely E. Duke

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TRUSTEE'S MOTION FOR ORDER GRANTING FINAL JUDGMENT - 15**