RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

ARI D. KUNOFSKY
KIERAN O. CARTER
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, DC 20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov

BART M. DAVIS
United States Attorney
*Of counsel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES R. ZAZZALI,<br><br>       Plaintiff,<br><br>  v.<br><br>DOUGLAS SWENSON, *et al.,*<br><br>    Defendants. | Civil No. 1:13-cv-00086-S-MJP<br><br>**MEMORANDUM IN SUPPORT OF UNITED STATES' OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.   THE UNITED STATES IS NOT A TRANSFEREE BECAUSE IT DID NOT HAVE SUFFICIENT
     DISCRETION OVER THE TAXPAYER ACCOUNT.................................................... 4

     A.   Dominion Requires Discretion Over the Taxpayer's Account in a Legal Sense, and
          Not Simply the Use of the Underlying Fungible Currency......................................... 6

          1.  *Like a bank, the IRS receives a payment and credits a particular account.* ............... 9

          2.  *The IRS has no more discretion to refuse to honor a valid claim for refund than a
              bank has to refuse to honor a negotiable instrument.* ................................................. 12

          3.  *Differences between banks and the IRS do not change the determination that the IRS
              is a conduit here.* ....................................................................................................... 15

     B.   Just Because a Debt Is Being Paid Does Not Mean the Creditor Takes Dominion
          over the Funds. ....................................................................................................... 16

     C.   The Dominion Test Is Not Limited to Banks and Financial Intermediaries. .......... 18

II.  THE TRUSTEE IS ENTITLED TO A SINGLE SATISFACTION.  HE HAS OVERSTATED HIS
     POTENTIAL CLAIM BY $1.3 MILLION.................................................................. 20

<u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

**Cases**                                                                                     **Pages(s)**

*Auza v. United Dev., Inc. (In re United Dev., Inc.)*,
   319 F. App'x 685 (9th Cir. 2009) ...................................................................4, 12

*Brincko v. Rio Props., Inc. (In re Nat'l Consumer Mortgage, LLC)*,
   No. 2:10-cv-930, 2013 WL 6844494 (D. Nev. Dec. 20, 2013) .............................18

*Citizen's Bank v. Strumpf*,
   516 U.S. 16 (1995)..................................................................... *passim*

*Comm'r of Internal Rev. v. Indianapolis Light & Power Co.*,
   493 U.S. 203 (1990).................................................................... *passim*

*Henry v. Official Comm. of Unsecured Creditors (In re Walldesign, Inc.)*,
   872 F.3d 954 (9th Cir. 2017), *pet. for cert. filed*, No. 17-1210 (U.S. Feb. 28, 2018)...............4

*In re DBSI, Inc.*,
   561 B.R. 97 (D. Idaho 2016)..........................................................1, 11

*In re DBSI, Inc.*,
   697 F. App'x 493 (9th Cir. 2017) ..................................................1, 4, 11

*In re DBSI, Inc.*,
   869 F.3d 1004 (9th Cir. 2017) ............................................................1

*In re Regency Int'l Flooring, LLC*,
   No. 1:09-cv-1146, 2010 WL 4053982 (W.D. Mich. Oct. 14, 2010) .......................3

*Jones v. Liberty Glass Co.*,
   332 U.S. 524 (1947)...................................................................10

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
   No. 16-784, __ U.S. __, 138 S. Ct. 883 (U.S. Feb. 27, 2018) ..................................3

*Murphy v. Smith*,
   No. 16-1067, __ U.S. __, 138 S. Ct. 784 (U.S. Feb. 28, 2018) ...............................13

*Parker v. Community First Bank (In re Bakersfield Westar Ambulance, Inc.)*,
   123 F.3d 1243 (9th Cir. 1997) ...........................................................9

*Rische v. United States*,
   No. 2:16-cv-339, 2016 WL 9331289 (W.D. Wash. Nov. 7, 2016).........................10

*Universal Serv. Admin. Co. v. Post-Confirmation Comm. (In re Incomnet, Inc.)*,
   463 F.3d 1064 (9th Cir. 2006) ................................................. *passim*

**Statutes**

11 U.S.C § 546(e) ........................................................................................................................3

11 U.S.C. § 550 ...............................................................................................................2, 4, 6, 18

26 U.S.C. § 6402(a) ...............................................................................................................5, 10, 13

26 U.S.C. 6511 ........................................................................................................................13, 15

26 U.S.C. § 6513 ........................................................................................................................10

26 U.S.C. § 6514 ........................................................................................................................13

26 U.S.C. § 7809 ........................................................................................................................9

31 U.S.C. § 1324 ................................................................................................................9, 10, 14

Idaho Code § 14-503 ..................................................................................................................15

Idaho Code § 14-506 ..................................................................................................................15

Idaho Code § 14-520 ..................................................................................................................15

Idaho Code § 28-3-404 ...............................................................................................................12

Idaho Code § 28-4-401 .........................................................................................................13, 14

Idaho Code § 28-4-402 .........................................................................................................12, 13

Idaho Code § 28-4-404 ...............................................................................................................12

**Other Authorities**

U.C.C. Article 3 .................................................................................................................12

U.C.C. Article 4 .................................................................................................................12

12 C.F.R. § 204.1 *et seq.*...................................................................................................9

Fed. R. Civ. P. 56 ................................................................................................................1

Fed. R. Bankr. P. 7056........................................................................................................1

<u>Michie Banks & Banking</u>, ch. 9, § 1 (2018) .................................................................8, 9

The United States responds to the Trustee's motion for summary judgment (Dkt. No. 237) and cross-moves for summary judgment under Fed. R. Civ. P. 56 (as incorporated by Fed. R. Bankr. P. 7056), and states as follows:

## INTRODUCTION

At issue is whether the United States is a transferee. If, as the United States contends, the United States was not a transferee, but rather is a conduit, then the Trustee must look to the real transferees who took the benefit of the transactions at issue and used individual tax accounts at the IRS like a bank deposit account to park ill-gotten gains.

Previously, this Court avoided transfers totaling $17 million that the Debtors paid on the owners' behalf. (Dkt. No. 221, Final Judgment.) Of those funds, $13.4 million were not refunded to the Debtors' owners. *In re DBSI, Inc.*, 561 B.R. 97 (D. Idaho 2016). The Court's decision was affirmed in part and reversed in part by the Ninth Circuit. *In re DBSI, Inc.*, 869 F.3d 1004 (9th Cir. 2017); *In re DBSI, Inc.*, 697 F. App'x 493 (9th Cir. 2017). The time in which United States may petition for certiorari to the Supreme Court has not expired.

The Court also concluded that the Trustee should not recover from the United States $3.6 million, the amount which the IRS refunded to the owners after they claimed refunds were due. The Ninth Circuit remanded the matter to the Court with instructions to apply the Ninth Circuit's "dominion" test to determine whether the Trustee can recover an additional $3.6 million from the United States, even though the United States already paid that amount to the owners of the Debtors. The Trustee does not seriously contend that the IRS could have rejected the owners' requests for refunds – indeed, the best he can do is make unsupported claims that the original tax may not have been owed – yet the

1

Trustee wants to make the United States pay a second time.  The Ninth Circuit law does not support the result sought by the Trustee.

In the Ninth Circuit, a recipient of funds is a "transferee" under 11 U.S.C. § 550(a) if it has both legal title and discretion over the "if, when, and how" those funds are distributed.  *In re Incomnet, Inc.*, 463 F.3d 1064, 1073-1074 (9th Cir. 2006). "Discretion" does not mean control over the *physical funds* or mere possession.  Instead, the Ninth Circuit focuses on the legal obligations of the account holder and the institution maintaining the account.  The classic example is the relationship between the depositor and a bank.  When a bank receives the funds from an account holder, the bank can use the funds at will to make loans, investments, *etc*.  But the bank must keep account of the "debt" it owes to the depositor and it may not reduce that debt until the depositor makes an appropriate claim via a withdrawal or negotiable instrument.

Here, the overpayment of taxes created a debt to the taxpayers, for which the taxpayers could seek a refund so long as the statute of limitations had not expired.  As described below, the IRS had no more discretion than a depository bank in deciding "if, when, and how" to return the funds to the taxpayers.  Consequently, the United States was a conduit regarding the $3.6 million it received and later refunded to the taxpayers.

Finally, the United States has taken steps to assist the Trustee in collecting from the taxpayer-criminals.  During the criminal case, the United States collected $1.3 million of the $3.6 million from funds it traced after the refund.  It reached a stipulation with the Trustee and turned those funds over to him.  Certainly, the Trustee cannot recover twice for the $1.3 million he already received.  11 U.S.C. § 550(d) (prohibiting a double recovery).  Even if the Court decides that the Trustee can recover money from the United

States that the United States already refunded to the taxpayer-criminals, the Court should

not require the payment of funds that the United States already turned over to the trustee

in connection with the criminal proceedings.

## ARGUMENT

The Supreme Court recently examined the conduit issue in a case involving the

safe-harbor provisions under 11 U.S.C § 546(e).  It noted that when there is a "transfer

from A → D that was executed via B and C as intermediaries, such that the component

parts of the transfer include A → B → C → D" then the trustee may seek to avoid the

true transfer, *i.e.* "A → D."  *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, No. 16-784,

__ U.S. __, 138 S. Ct. 883, 888 (U.S. Feb. 27, 2018).  The Court held that a court should

examine the transfer the Trustee seeks to avoid (*i.e*, A → D), and not its component parts.

*Id*., at 893.  But a "defendant in that action is free to argue that the trustee failed to

properly identify an avoidable transfer … including any available arguments concerning

the role of the component parts of the transfer."  *Id*., at 894.  While the United States does

not contest the transfers of the Debtors' property occurred, the United States was a mere

component part to the larger fraud pursued by the owners, and thus not the transferee to

the funds it refunded to the owners/taxpayers.

While the Supreme Court did not rule on what constitutes an intermediary or

conduit (versus a transferee), if this Court rules the United States is a conduit, then the

Supreme Court's analysis leaves the Trustee to chase the taxpayer-criminals in this action

(*e.g.*, Douglas Swenson).  "Congress did not intend to require the IRS to disgorge the

amount of the payment twice, *i.e.*, once to the taxpayer as a refund, and once to the

Trustee under § 550(a)(1)"  *In re Regency Int'l Flooring, LLC*, No. 1:09-cv-1146, 2010

WL 4053982, at *7 (W.D. Mich. Oct. 14, 2010).  Such a result would simply "be inviting

3

fraud on the government." *Id*.  To avoid that result, the Court should not increase the

judgment beyond the original judgment of $13.4 million.

I.   **THE UNITED STATES IS NOT A TRANSFEREE BECAUSE IT DID NOT HAVE SUFFICIENT DISCRETION OVER THE TAXPAYER ACCOUNT.**

Under 11 U.S.C. § 550(a), the Trustee can recover from a transferee.  The parties

agree that the "dominion test" controls in the Ninth Circuit when determining who is a

"transferee."  *See, e.g*., *In re Incomnet, Inc*., 463 F.3d at 1069.[1]  The dominion test sets

out a two-part inquiry: (1) whether the entity has "legal authority over the money"; and

(2) whether the entity has "the right to put the money to one's own purpose."  *Id*. at 1070

(quoting *In re Cohen*, 300 F.3d 1097, 1102 (9th Cir. 2002)).

As to the first part, the parties agree the transfers of $17.1 million occurred, that

the IRS credited the transfers to taxpayers' accounts, and then made $3.6 million in

refunds.  (*See* USA Stmt. of Facts ¶ 2.)  But the Trustee asserts the IRS somehow

---

[1] While the United States recognizes the Ninth Circuit's standard is binding on this Court, it notes that a split exits between the Eleventh and Ninth Circuits over the appropriate test.  *In re DBSI*, 697 F. App'x at 494-495.  A petition for a writ of certiorari is currently pending from the Ninth Circuit's decision in *In re Walldesign*, noting the split among the Circuits.  Petition for Writ of Certiorari, *Henry v. Official Comm. of Unsecured Creditors (In re Walldesign, Inc.)*, 872 F.3d 954 (9th Cir. 2017), *petition for cert. filed*, No. 17-1210 (U.S. Feb. 28, 2018).

Under either test, the United States is a non-liable conduit, making it unnecessary for the United States to take a position in this matter.  While the Ninth Circuit follows the dominion test, the Eleventh Circuit applies a control test, which "takes a more gestalt view of the entire transaction to determine who, in reality, controlled the funds in question."  *In re Incomnet, Inc.*, 463 F.3d at 1071.  While the Ninth Circuit has rejected that test, *id*., the fact remains that banking and tax laws discussed in this brief are consistent Nationwide.  Thus, the underlying factual analysis does not change.  Accordingly, the holding of the Eleventh Circuit that the IRS is a conduit still applies here even under the Ninth Circuit's stricter dominion test.

exercised legal authority in part because it presented Debtors' checks to the Debtors'
bank and deposited the funds it received into a in a general Treasury fund.  (Dkt. No.
237-1, Tr. Br., p. 10.)  That is factually irrelevant.  The Ninth Circuit held "[d]epositing a
third party's money into one's own account is insufficient to establish legal authority to
that money."  *Auza v. United Dev., Inc. (In re United Dev., Inc.)*, 319 F. App'x 685, 687
(9th Cir. 2009).  And even if the IRS may have taken legal title to funds "as a formal
matter," the United States could not exercise legal authority as it had a "binding legal
relationship" with the taxpayers requiring it to disburse the funds upon the filing of a
valid claim for refund.  *See In re Incomnet,* 463 F.3d at 1074, 1075 (holding entity was a
transferee because it lacked a binding legal relationship).

      The Trustee's error goes forward into the second factor of the dominion test.  The
Trustee misapplies the dominion test by focusing on control of dollars rather than the
taxpayer's account.  When a taxpayer makes a payment to the IRS or files a tax return, an
account is created that indicates both debits and credits.  In this case, when the Debtors
sent payments on behalf of the owners, the IRS entered a credit on each account.  The
credit entry represents a payment made and – if that credit exceeds the taxpayer's liability
– a corresponding obligation to handle the resulting overpayment according to statute.
Federal statutes remove any discretion in opposing a validly stated claim for refund (*i.e.*,
one where there is no dispute that the tax liability was overpaid).  *E.g.*, 26 U.S.C.
§ 6402(a).  The strict limitations regarding the IRS' treatment of tax overpayments
distinguishes the United States from the transferee in *In re Incomnet*, and aligns the
United States with the case law on depository banks, which are the classic example of
conduits.  *Incomnet* at 1073-1074; Tr. Br., p. 2, (stating that a "deposit bank" is a

conduit).  As described below, the United States is a conduit because it is even more restricted than a depository bank in the "if, when, and how" it can take in payments or issue refunds.  *Id*. at 1071, 1076.

> **A. Dominion Requires Discretion Over the Taxpayer's Account in a Legal Sense, and Not Simply the Use of the Underlying Fungible Currency.**

The second prong of *Incomnet*'s "dominion test" asks whether the entity has "the right to put the money to one's own purpose."  *Incomnet*, 463 F.3d at 1070.  Put another way, the test looks at whether the entity "has discretion over if, when, and how it **disburses** [the] funds."  *Id.* at 1071, 1076 (emphasis added).  But that standard does not require the Court to trace the physical dollars themselves to see if they are deposited into a general account.  Indeed, the focus of the Ninth Circuit's test was how the funds are disbursed.  *Id*.

Under *In re Incomnet* and *Citizen's Bank v. Strumpf*, the concept of "discretion" means that an entity must have the ability to disburse the funds to someone other than the account holder as it wishes when it comes to how the funds *are accounted for*, rather than a physical sense of how the dollars are moved about.  *Citizen's Bank v. Strumpf*, 516 U.S. 16 (1995).  To hold otherwise would require this Court to invalidate the binding holdings of either the Ninth Circuit in *Incomnet* or the Supreme Court in *Strumpf*.

In *In re Incomnet*, the Ninth Circuit held that the United Service Administrative Company ("USAC") was a transferee under 11 U.S.C. § 550(a) because it had discretion over "if, when, and how it disburse[d]" the transfers to beneficiaries.  *In re Incomnet* 463 F.3d at 1071, 1076.  Specifically, the USAC was a non-profit entity created by the Federal Communication Commission to collect contributions from telecommunication companies and then distribute them among a specific group of beneficiaries, specifically

6

schools and libraries. *Id*. at 1066-1067. The Ninth Circuit held that the USAC was a transferee because it had the ability to decide how to invest the contributions, to determine how much it would pay each beneficiary, and when it would make those distributions to the schools and libraries (and not back to the communication companies). *Id*. at 1071-1072. The Court specifically noted that USAC was not an agent for the communication companies, and that it had no "binding legal relationship" requiring the USAC to pay its funds to a particular beneficiary. *Id.* at 1075.

*Incomnet* contrasted the USAC with a depository bank, which it found was not a transferee under section 550. *In re Incomnet*, 463 F.3d at 1074. The Ninth Circuit held that when a bank receives currency from a depositor, the bank usually takes title to the depositor's funds, but does "not have dominion over them because it has no discretion over the uses to which the depositor's money is to be put." *Id.* The Court held that in this situation, the bank is a "conduit or agent for a general deposit." *Id*.[2] Of course, the bank does not use the specific dollars to credit the account; it uses deposited funds to make loans or investments, hopefully to make a profit beyond the interest owed on the depositor's account. *E.g.*, *Comm'r of Internal Rev. v. Indianapolis Light & Power Co.*, 493 U.S. 203, 210 (1990). Thus, the Ninth Circuit must have been referring to the obligation to make a payment when the depositor sought a withdrawal, not a tracing of specific dollars through the conduit's particular accounts.

---

[2] The Court contrasted this with a bank taking in a payment on a loan, where the payment reduced a debt *owed to* the bank and the bank could use the funds without any obligation to account for an obligation to repay them. *Id*. at 1074 n. 12.

The scope of a bank's relationship with the depositor and its ability to use the deposited funds is recognized in *Citizen's Bank v. Strumpf*, 516 U.S. 16, 21 (1995).  In *Strumpf*, a depositor filed for bankruptcy, and the bankruptcy trustee attempted to recover the funds from the bank, asserting that the funds were the debtor's property.  *Id*. at 17-18. The bank refused to turn over funds to the trustee, asserting there was a temporary freeze on the account, and that it might assert a right to offset in the near future against the deposit account.  *Id*.

The Supreme Court held that when the depositor turned over funds to the bank, he ceded legal title to the funds, and the funds were now the bank's property.  *Id*. at 21. Notably, the Court held that a bank account does **not** consist of money belonging to the depositor; instead, a bank account is simply a promise on the part of the bank to pay back the amount deposited.  *Id.*  In this respect then, a bank has discretion over the use of the deposited funds.  Once a bank receives funds (whether actual currency or simply by denoting a transfer on an accounting ledger), it has the ability to use the funds for other purposes, such as making loans, investing, or honoring checks.  *See, e.g.*, 5A <u>Michie Banks & Banking</u>, ch. 9, § 1 (2018).  What a bank does not have full discretion over, however, is the legal consequences of its debt to the depositor on its ledger.  The deposit account consists of "a promise to pay, from the bank to the depositor," and any refusal to pay is a breach of a contractual agreement.  *Strumpf*, 516 U.S. at 21.

When *Incomnet* is read in the context of *Strumpf*, the concept of "discretion" must mean that the recipient of the funds has the ability to adjust the depositor's account rather than putting the currency represented by the account entry to another use.  If *Incomnet* stood for the proposition that an entity is a transferee every time it has the ability to use

8

the *physical* funds (*i.e.*, the specific dollars deposited) as it wishes, then every bank would be a transferee, not a conduit, because a bank has the discretion under *Strumpf* to use deposited funds for whatever use it chooses.  Instead, *Incomnet*'s concept of "discretion" must look to the ultimate legal obligations between: (a) depositor or issuer of the negotiable instrument, (b) account holder or taxpayer, and (c) the agency or bank represented by the account.

Under *Incomnet* and *Strumpf*, institutions that hold accounts of deposits are not transferees; they do not have discretion over how, when, and to whom they disburse funds.  Under this logic, United States in this case is not a transferee.  The IRS had an obligation to refund overpaid taxes if a valid claim for refund was made, no different than a bank receiving a withdrawal request or negotiable instrument.

The Trustee's argument to the contrary relies on interpreting *Incomnet* to hold that an entity is a transferee every time it has the ability to use the *specific* and *physical* funds as it wishes.  The Trustee's interpretation simply cannot stand because it would transform every bank into a transferee, and would cause *Incomnet* to be in conflict with Supreme Court precedent.

### 1.   Like a bank, the IRS receives a payment and credits a particular account.

The IRS' discretion to use and disburse tax payments is commensurate with a bank's discretion to use and disburse funds in a bank account.  When a person deposits money into a bank account, "the depositor enters a debtor-creditor relationship with the bank."  *E.g.*, *In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243, 1246 (9th Cir. 1997); *see also*, *Strumpf*, 516 U.S. at 21.  A bank generates profits by taking in deposits, putting them into a general account, lending those funds, and earning a higher rate of

9

interest than what it pays its depositors. *See, e.g.*, *Indianapolis Power*, 493 U.S. at 210.

A bank does not even need to keep sufficient reserve of cash on hand to cover all of its

deposits. *See* 12 C.F.R. Part 204.[3]

Similarly, a taxpayer enters into a debtor-creditor relationship with the United

States when it makes tax payments. The United States receives funds and deposits them

in a general Treasury account, just like a bank putting funds into its general account.

*Compare* 26 U.S.C. § 7809 (tax funds must be deposited with "Treasury of the United

States"), *with* 5A Michie Banks & Banking, ch. 9, § 1 ("The money deposited becomes

part of the general fund of the bank.") The IRS then puts a credit on the taxpayer's

account. 26 U.S.C. § 6513 (setting out the rules governing timing of tax payments); Dkt.

Nos. 237-9 to 239-13 (showing payments being recorded). Again, this is similar to a

bank's accounting for a deposit. If a timely claim for refund is made and no other debts

are owed to the United States, then the IRS "shall" pay the overpayment to the taxpayer.

26 U.S.C. § 6402(a).[4] If the taxpayer does not have an overpayment because additional

funds are owed (for example, if a claim is only timely for some of the taxes or only

partially allowed), then the IRS is prohibited from paying the additional amount.

31 U.S.C. §§ 1324(a), (b) (appropriating funds to pay tax refunds "only for" "refund to

---

[3] The IRS does not have a similar requirement to keep funds on hands, but it has an appropriation from Congress to issue refunds attributable to any particular tax account. 31 U.S.C. §§ 1324(a), (b). The full faith and credit of the United States makes keeping a reserve unnecessary.

[4] While not defined by statute, case law has defined overpayments as "any payment in excess of that which is properly due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947), *quoted in Rische v. United States*, No. 2:16-cv-339, 2016 WL 9331289, *2 (W.D. Wash. Nov. 7, 2016).

the limit of liability of an individual tax account").  Given that the IRS lacks any

discretion on the "if, when, and how" it must disburse its funds, it is not a transferee.

By contrast, the Trustee advocates for a colloquial understanding of a deposit

account, arguing that a bank has "an immediate contractual duty to hold transferred funds

for a stated purpose."  (Tr. Br., p. 10.)  Under the Trustee's logic, the deposited funds

"remain under the ultimate control of the depositor."  *Id.*  The Trustee's interpretation

fails to represent what happens as a matter of law.  While account holders may

colloquially discuss funds deposited into a bank account as "their money," they cede

control over the physical funds.  *See Strumpf*, 516 U.S. at 21.  Instead, a bank has

unfettered use of those funds, and has a "debt" on its books showing a contractual

obligation to the holder.  The "contractual obligation" is not, as the Trustee suggests, one

to hold physical funds in a segregated fashion.  It is simply a duty to keep the debt on the

bank's accounting ledger.  While a bank can use the deposited funds themselves for a

variety of purposes, it will still owe the debt to the account holder, which continues to

exist until the holder calls it in.  It is this lack of discretion – the legal inability to take a

debt owed to the depositor off its accounting books – that makes a bank a conduit rather

than a transferee.  The Trustee's argument otherwise ignores the Supreme Court's

analysis and holding in *Strumpf*.

In short, this Court ruled correctly in its initial decision on summary judgment on

this matter with respect to the $3.6 million refunded to the taxpayers.  The District Court

applied the dominion test.  *In re DBSI, Inc.*, 561 B.R. at 105-106.  This Court adopted the

rationale from the only Circuit-level precedent dealing with IRS refunds under the

conduit/transferee analysis.  *Id.*, *quoting In re Menotte*, 745 F.3d at 1352–1353.  It noted

that the IRS was a mere conduit because the IRS acted no different than a bank receiving

deposits. *Id*. While the Ninth Circuit reversed and remanded for this Court to apply the

Ninth Circuit "dominion test," it notably did not find the Court's factual analysis was in

error. *In re DBSI*, 697 F. App'x at 495. As explained below, the IRS has no more

discretion than a bank with a deposit account regarding the "if, when, and how" refunds

are disbursed.

> ### 2. The IRS has no more discretion to refuse to honor a valid claim for refund than a bank has to refuse to honor a negotiable instrument.

The Trustee also argues that the IRS is different from a bank because a "depositor

always has an immediate, unqualified right to recall its deposited funds," but a "taxpayer

has no such immediate unqualified right to demand return of a tax payment once accepted

by the IRS." (Tr. Op., p. 10.) The Trustee is again glossing over the law. When it comes

to the "if, when, and how" of when a bank or the IRS must make their respective

distributions, both lack discretion.

Banks generally repay their debt to an account holder, but it is not the

"immediate, unqualified" right to recall funds. An account holder does not "recall"

funds, it calls in a debt that the bank owes it. *Strumpf*, 516 U.S. at 21. Merely

"[d]epositing a third party's money into one's own account is insufficient to establish

legal authority to that money." *Auza*, 319 F. App'x at 687.

There are numerous provisions within the banking law that clearly limit the

alleged "immediate, unqualified" rights to remove funds. As explained in *Strumpf*, a

bank can put a temporary freeze on an account. Negotiable instruments (like a check) are

subject to statutes of limitation. Idaho Code § 28-4-404.[5] A bank receiving a sufficiently stale check may ignore it, thus lawfully impeding the account holder's supposed "unqualified right" to access or deliver funds in "his account" to another. A bank also can rightfully refuse to honor a check for a variety of other reasons. Idaho Code §§ 28-4-402(3) (refusal for insufficient funds in the account), 28-4-403 (stop-payment order), 28-4-405 (dead or incompetent customer). And a bank can reject a check if there was fraud or similar problems. *See, e.g.*, Idaho Code § 28-3-404.

The key here is the remedy. When a bank refuses an account holder's request to withdraw funds or to pay a third party on the account holder's behalf via a negotiable instrument like a check, there is no action in trover or other action to recover personal property. Instead, the account holder (or holder of a negotiable instrument) has a right to sue the bank for the unpaid debt plus consequential damages. Idaho Code § 28-4-402(2). Thus, when a bank is presented with a check, it has the theoretical ability to refuse to honor the check for any reason.

Like a bank, the IRS generally refunds overpayments. Like a bank, the IRS will maintain a credit on an account until the refund claim is made (either by filing a tax return or filing a separate claim for refund), or the statute of limitations bars the refunding or credit of the overpayment. Like a bank, the valid claim for refund is subject to potential freezes, offset rights, and potential scrutiny to ensure the refund is actually

---

[5] The Idaho legislature codified the Uniform Commercial Code in title 28 of its laws. We cite to those laws as an example. Subtitle 3, which corresponds with U.C.C. Article 3, governs negotiable instruments, while Subtitle 4, which corresponds with U.C.C. Article 4, governs depository banks.

owed to the taxpayer.  26 U.S.C. §§ 6511 (setting time to seek a refund); 6402(a)

(authorizing refunds).

When a timely and proper refund claim is made, the IRS has no choice in

returning the overpayment.  Under 26 U.S.C. § 6402(a), the IRS "**shall**" "refund any

balance owed" to a taxpayer.  26 U.S.C. § 6511(a).  Unlike a bank, the IRS does not have

the right to dishonor a valid request for refund.  *E.g., Murphy v. Smith*, No. 16-1067, __

U.S. __, 138 S. Ct. 784, 787 (U.S. Feb. 28, 2018) ("[T]he word 'shall' usually creates a

mandate, not a liberty, so the verb 'shall be applied' tells us that the district court has

some nondiscretionary duty to perform.").[6]

Moreover, a bank can choose to go beyond the limits of the depositor account.  A

bank may authorize an overdraft of the account.  Idaho Code § 28-4-401.  In other words,

if a depositor writes a check for $100, and there is only $50 in an account (*i.e.*, the bank

only owes $50 to the depositor), then bank could authorize the withdrawal of $100, and

seek the difference from the depositor.  *See id*.  The IRS does not have this discretion.

Congress has provided a general appropriation of funds to pay tax refunds.  31 U.S.C. §

1324(a).  Yet the IRS cannot disburse any more than the overpayment shown on the tax

account.  *Id*. § 1324(b).  Given that the IRS has even less discretion as to "if, when, and

how" it will return funds than a bank, the Court should hold that the IRS is acting as a

conduit when it holds funds where a tax is not owed and refunds them to the taxpayer.

---

[6] The IRS may make errors or be duped by fraudsters.  When the IRS issues an erroneous refund, Congress has provided that it may collect the refund via a civil action.  26 U.S.C. §§ 6514 (defining erroneous refund); 7405 (authorizing civil action).

### 3. Differences between banks and the IRS do not change the determination that the IRS is a conduit here.

Of course a depository bank and the IRS are not the same.  They serve different purposes, which means the rules, statutes, regulations, and procedures governing how they act are different.  The IRS is a federal entity that collects taxes, while a bank is a private entity takes in funds from depositors, either invests or loans those funds, and tries to earn a profit on the difference.  This does not change the fact that both the bank and IRS have a definite and specific legal obligation to pay the account holder or taxpayer when the legal conditions are satisfied.  And unlike a bank that can pay someone other than the account holder at the holder's direction, the IRS can pay an overpayment only to the taxpayer on the tax account.  31 U.S.C. § 1324.  The IRS and a depository bank both are governed and limited by strict legal obligations regarding "if, when, and how" to repay their respective debts to the account holder or taxpayer; there is no room for discretion.

Even after the statute of limitations on seeking a refund has passed, or in the case of the bank when property is deemed abandoned, the account is governed by law and leaves no discretion.  For an Idaho bank, after five years of no activity, a depository account in Idaho escheats to the state as "abandoned" property.  Idaho Code §§ 14-503, 14-506(a); 14-520.  At that point, the account holders (or their heirs) can go to the state to seek the funds, and the bank is relieved of liability.  Idaho Code § 14-520.  When an overpayment exits on an account at the IRS and the statute of limitations on refund has passed, the IRS loses the ability to apply those funds to other debts or refund them.  26 U.S.C. § 6511(b)(1) ("No credit or refund shall be allowed or made after the expiration of the period of limitation . . . .").  Again, the IRS lacks discretion.

15

**B.   Just Because a Debt Is Being Paid Does Not Mean the Creditor Takes Dominion over the Funds.**

The Trustee asserts that "when an entity receives a transfer in satisfaction of a debt or liability, it is an initial transferee." (Tr. Br., p. 5.)[7]  Because the United States can use the funds it collected on the debt before those funds were returned to the creditor, the Trustee concludes that the United States exercised dominion and is a transferee. *Id*.  The Trustee's statement is an incomplete rule that again conflicts with Supreme Court precedent and conflates the legal obligation to return funds with the ability to put deposited funds to work for other purposes.

In *Commissioner v. Indianapolis Power & Light Co*., the Supreme Court rejected such a bright-line rule when looking at when prepayments to a utility company should be considered taxable income to that company.  *Indianapolis Power*, 493 U.S. at 208.  The utility company used the prepayment funds it held for its own purposes, and it often applied the funds to the prepayment to a debt ultimately owed by the customer. *Id*. at 208-209, 211.  Applying the Trustee's proposed rule, the utility company is a transferee because it is the customer's creditor and could use the funds for its own purpose even if

_____

[7] Even if the Court were to adopt that holding, several tax payments made throughout the prior year or before the tax return was filed were refunded almost immediately.  The Trustee identifies $339,732, and tacitly concedes the IRS was truly a conduit. (Tr. Op., p. 8.)  Here the IRS held these funds and refunded the portion that was not applied to the tax liability.  The IRS was no different than a bank holding funds waiting to offset.  Once it did so, it immediately returned these payments.  Indeed, in one instance – Douglas Swenson's tax year 2006 – the IRS took a check for $250,000, Swenson filed a return showing no taxes due, and the IRS almost immediately refunded the $250,000.  (Dkt. No. 237-2, Tr. Stmt. of Fact, ¶¶ 10-13, Dkt. No. 237-10, Swenson Transcript for tax year 2005.)

the funds were later returned.  *Id*.  According to the Trustee, the utility company

exercised dominion.

      Although *Indianapolis Power* was applied in the income tax context, the Supreme

Court's analysis applies to this case and discredits the Trustee's argument.  While case

law  existed prior to *Indianapolis Power* that suggested that receipt of a payment and the

ability to use funds was sufficient to give a company "complete dominion" and thus make

the income taxable (*i.e.*, the rule the Trustee proposes here), the Supreme Court rejected

that simple rule.  *Id*. at 207 n.3.  The *Indianapolis Power* Court instead held that the

proper analysis was to examine whether the utility company could exercise "complete

dominion" over the funds and was no longer obligated to return an equivalent amount.

*Id*. at 209.  It held that the utility company could not because the deposits were "acquired

subject to an express 'obligation to repay' . . . [and] [s]o long as the customer fulfill[ed]

his legal obligation . . . his deposit ultimately [was] to be refunded."  *Id*. at 209.  The

Court held that the "key is whether the taxpayer has some guarantee that he will be

allowed to keep the money.  [The utility company's] receipt of these deposits was

accompanied by no such guarantee."  *Id*. at 210.  Accordingly, the funds in *Indianapolis*

*Power* were not taxable because the power company lacked dominion.  *Id*.  Once the

company no longer had an obligation to repay the customer (for whatever reason), it

finally exercised dominion.  *Id*. at 210-211.  As an example (consistent with *Strumpf*), the

Supreme Court noted that a bank does not take dominion over the funds in a deposit

account until it severs the depositor's right to withdraw funds.  *Id*. at 210 n.5.

      The Supreme Court also dismissed the Trustee's argument that using the funds,

while ignoring the obligation to repay, somehow changed the fact that the utility

17

company lacks "dominion."  It noted it was not significant that the "deposits could be

expected to generate income" for the utility company before they were returned.  *Id*. at

210.  The Court analogized the power company to a bank, which "could hardly operate

profitability if its earnings on deposits did not surpass its interest obligations" and yet

"the deposits themselves are not treated as income" based on the bank's lack of

dominion.  *See id*.

Given the foregoing, this Court should reject the Trustee's analysis.  The Trustee

presents an incomplete rule that does not apply to all debtor-creditor situations.  Where a

recipient of funds has the legal obligation to return those funds (or more accurately an

equivalent amount to those funds), the recipient cannot be held to have dominion over the

funds until the obligation to repay those funds has been extinguished.

### C.  The Dominion Test Is Not Limited to Banks and Financial Intermediaries.

The Trustee hints that the dominion test should be limited to banks and other

financial intermediaries.  (*See* Tr. Br., p. 2 ("[T]he IRS is decidedly not like a bank or

escrow agent.").) There is no basis in the law for such a limited test, and courts within the

Ninth Circuit have rejected such a narrow standard.

For example, in *In re National Consumer Mortgage, LLC*, a casino was either a

transferee or a conduit.  *Brincko v. Rio Props., Inc. (In re Nat'l Consumer Mortgage,

LLC)*, No. 2:10-cv-930, 2013 WL 6844494, *3 (D. Nev. Dec. 20, 2013).  There, a

Debtor's corporate president took $2.5 million in corporate funds via a cashier's check,

cashed the check at the Rio Casino, gambled and lost some of the proceeds, and took the

remainder.  *Id*.  The trustee in that matter asserted the casino had "dominion over the

funds because most of the cashier's checks were deposited in Rio's general operating

18

account, and Rio was free to use the funds as it would any other funds in its bank account." *Id*.

The District Court for the District of Nevada disagreed with the trustee's formalistic arguments. *Id*. Applicable Nevada law required the funds to be treated in a legal or accounting sense as if they were the gambler's property until the funds were lost on the casino floor. *Id*. The notion that the funds were deposited in the casino's general account was not relevant and could not overcome the fact that the Rio was legally obligated to immediately return the funds the gambler had not yet lost. *Id*. Thus, so long as the gambler did not lose, the casino was a mere conduit. *Id*. Once the gambler lost, the casino could reduce the amount it owed the gambler, and the difference would become the casino's property. *Id*. It was at that point (when the gambler's right to take the funds expired) that the casino became a transferee. This analysis is consistent with the institution severing the right of the account holder to withdraw funds discussed in *Indianapolis Power* and *Strumpf*.

The same rule should apply here. An account holder – be it a gambler, bank account holder, or taxpayer – must take certain steps to ask for the funds from the institution, whether filling out a form for the casino, submitting a timely draw or check on a bank account, asking for a return from the utility, or filing a claim for refund with the IRS. Once they do so, the casino, bank, utility, and IRS generally have no discretion in returning the funds. If the IRS, or other institution, had a duty to refund the money without discretion, then it is a conduit.

## II. THE TRUSTEE IS ENTITLED TO A SINGLE SATISFACTION. HE HAS OVERSTATED HIS POTENTIAL CLAIM BY $1.3 MILLION.

A trustee is only entitled to a single satisfaction of an avoided transfer. 11 U.S.C. § 550(d). In the criminal action against Douglas Swenson and his cohorts, the United States seized over $1.3 million from various bank accounts. These funds were traced back to the refunds the IRS issued to Swenson. (Ex. 201, Criminal Trial Exhibit 2100.) The United States has already turned over these funds to the Trustee as part of a stipulated agreement between the United States and the Trustee. (Ex. 202, Stipulated Agreement and Order; Ex. 203, Email from Trustee's counsel confirming receipt of the $1.3 million.)

The Stipulated Agreement specifically notes that the payment of these funds (and any others he received) would entitle the United States to a "dollar-for-dollar credit against such judgment up to the full amount of the Seized Funds actually delivered to the Trustee . . . ." (Ex. 202, Stipulated Agreement and Order ¶ 14.) If the Court finds the United States is liable as a transferee, it should reduce any judgment by the $1.3 million to avoid a double recovery.

## CONCLUSION

For the foregoing reasons, the United States should be granted summary judgment with respect to the Trustee's claim for $3.6 million that the United States paid to the owners of the Debtors.

Date:  March 15, 2018                    Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
Tax Division

20

*/s/ Ari D. Kunofsky* _____
ARI D. KUNOFSKY
KIERAN O. CARTER
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C.  20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov

BART M. DAVIS
United States Attorney
*Of counsel*

21