Keely E. Duke
ISB #6044; ked@dukescanlan.com
Kevin A. Griffiths
ISB #8187; kag@dukescanlan.com
**DUKE SCANLAN & HALL, PLLC**
P.O. BOX 7387
Boise, Idaho 83707
Telephone:  (208) 342-3310
Facsimile:  (208) 342-3299

Mark B. Conlan
ISB #9028; mconlan@gibbonslaw.com
Jennifer A. Hradil (admitted *pro hac vice*)
Brett S. Theisen (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
*Counsel to Plaintiff James R. Zazzali, as Trustee*
*for the DBSI Estate Litigation Trust*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>DBSI INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-12687 (CSS) (Bankr. D. Del.)<br><br>Jointly Administered |
| JAMES R. ZAZZALI, as Trustee for the Debtors' Jointly Administered Chapter 11 Estates and/or as Trustee for the DBSI Estate Litigation Trust,<br>Plaintiff,<br><br>v.<br><br>DOUGLAS L. SWENSON, *et al.*,<br>Defendants. | Adv. Proc. No. 13-cv-00086-MJP<br><br>**TRUSTEE'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT** |

---

[1] The last four digits of DBSI Inc.'s federal tax identification number are 5037.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

I.  THE IRS IS An Initial transferee LIABLE FOR THE FULL AMOUNT OF THE TRANSFERS ......................................................................................... 1

    A.  The IRS is Not Like A Depository Bank .................................................... 1

        1.  The Transfers Were Payments to Satisfy an Existing Tax Liability ..... 1

        2.  A Taxpayer Does Not Have an "Account" with the IRS .................... 4

        3.  The Potential For A Refund Claim Does Not Deprive the IRS of Dominion ............................................................................. 5

    B.  The IRS Exercised Dominion, at the Latest, When the IRS Assessed the Insiders' Income Tax Liability.................................................... 7

    C.  *Merit Management* Does Not Interpret "Transferee" In Section 550(a). ...... 8

    D.  Applying the Mere Conduit Doctrine Here Is Contrary to Bankruptcy Policy 9

II.  THE TRUSTEE DOES NOT INTEND TO RECEIVE A DOUBLE RECOVERY 10

CONCLUSION ............................................................................................ 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acequia*,
   34 F.3d 800 (9th Cir. 1994) ...............................................................................9

*Bonded Fin. v. European Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) ...........................................................................2, 7

*In re Bullion Reserve of N. Am.*,
   922 F.2d 544 (9th Cir. 1991) ...............................................................................2

*Citizens Bank of Maryland v. Strumpf*,
   516 U.S. 16 (1995)................................................................................................5

*Commissioner v. Indianapolis Power & Light Co.*,
   493 U.S. 203 (1990)..........................................................................................3, 4

*Dantzler v. U.S.*,
   133 F.3d 1247 (11th Cir. 1999) ............................................................................3

*Ertman v. U.S.*,
   165 F.3d 204 (2d Cir. 1999)..................................................................................2

 *In re Incomnet, Inc.*,
   463 F.3d 1064 (9th Cir. 2006) ..............................................................................1

*Kalb v. U.S.*,
   505 F.2d 506 (2d Cir. 1974)..................................................................................6

*Merit Management Group Ltd. V. FTI Consulting*,
   __ U.S. __, 138 S.Ct. 883 (Feb. 27, 2018)........................................................8, 9

*In re Nat'l Consumer Mortg.*,
   2013 WL 6844494 (D. Nev. Dec. 20, 2013)..........................................................7

*Ott v. U.S.*,
   141 F.3d 1306 (9th Cir. 1998) ..............................................................................2

*Steinberg v. Comm'r*,
   19 Fed. Appx. 498 (9th Cir. 2001)........................................................................6

*VanCanagan v. U.S.*,
   231 F.3d 1349 (Fed. Cir. 2000)..........................................................................2, 3

2597662.4  110222-71675

*In re Walldesign, Inc.*,
   872 F.3d 954 (9th Cir. 2017) ................................................................................10

**Statutes**

11 U.S.C. § 546................................................................................................................ 8

11 U.S.C. § 550................................................................................................................ 1

26 U.S.C. § 6151 ............................................................................................................. 2

26 U.S.C. § 6402 ............................................................................................................. 6

26 U.S.C. § 6511 ............................................................................................................. 6

2597662.4   110222-71675

<u>PRELIMINARY STATEMENT</u>

Mere conduits serve as intermediaries between the real parties to a transaction.  For example, depository banks receive funds for deposit into a checking account for the purpose of distributing them on behalf of the account holder to third parties.  Escrow agents receive funds for the express purpose of holding them and later distributing them to a third party.  The IRS simply does not function as such an intermediary.  When the IRS receives tax payments, it accepts them in satisfaction of a tax liability, not for the purpose of disbursing them on behalf of the payor.  In short, when the IRS receives tax payments it does well more than simply hold funds as a trustee or an agent for any other person or entity.  *See In re Incomnet, Inc.*, 463 F.3d 1064, 1075 (9th Cir. 2006).  The sole purpose of the IRS-taxpayer relationship is revenue collection.  Entities, such as the IRS, that receive payments to satisfy a liability are "transferees" under 11 U.S.C. § 550 (a).

I. **THE IRS IS AN INITIAL TRANSFEREE LIABLE FOR THE FULL AMOUNT OF THE TRANSFERS**

The IRS exercised dominion and was the initial transferee when it accepted and deposited the Transfers.[2]  The IRS's argument to the contrary – that, in accepting tax payments, it functions like a bank accepting deposits – is demonstrably false.  In any event, under any view, the IRS exercised dominion over the Transfers, at the latest, when it assessed tax liability for each tax year.  Thus, at a minimum, the Trustee is entitled to an additional judgment in the amount of $3,280,986.78.  *See* Mov. Br. at 6-10.

A. **The IRS is Not Like A Depository Bank**

1. **The Transfers Were Payments to Satisfy an Existing Tax Liability**

The IRS does not dispute that when a bank receives funds for deposit into a checking or

---

[2] Capitalized terms not defined herein have the meaning defined in the Trustee's moving brief.

1

savings account, the bank does not exercise dominion over those funds, but when a bank receives payment on a loan, the bank exercises dominion over that payment. *See In re Incomnet*, 463 F.3d at 1074 n.12; *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 549 (9th Cir. 1991); *Bonded Fin. v. European Am. Bank*, 838 F.2d 890, 892, 895-96 (7th Cir. 1988); Mov. Br. at 6-7; Opp. Br. at 7 n.2. However, the IRS then ignores this critical distinction, and all of the IRS's efforts to analogize its receipt of tax payments to a bank's receipt of deposits fall short. The IRS is "like a bank", if at all, when a bank receives payment on a loan. That bank is an initial transferee, and so is the IRS.

Income tax is due on the date a return is due, without regard for any extension. *See* 26 U.S.C. § 6151. Because the Insiders' federal income taxes were due on April 15th each year, when the IRS accepted the Transfers with the Insiders' extension requests, the Transfers were payments on account of an existing tax liability. *Ott v. U.S.,* 141 F.3d 1306, 1310 (9th Cir. 1998) (holding that "any amounts remitted with a Form 4868 must be payments in satisfaction of tax obligations"). Like a bank accepting a loan payment, the IRS exercised dominion at that time. When the IRS later assessed tax liability upon the filing of the Insiders' returns, the IRS formally credited those payments against the assessed liability, like a bank crediting a loan. If the court finds that the IRS had not already obtained dominion, the IRS did so then.

The IRS's attempt to portray itself as receiving "deposits" like a bank has been roundly rejected by courts finding that remittances made with Form 4868 extension requests are tax payments, not deposits. *See, e.g., Ott,* 141 F.3d at 1309-10 (rejecting IRS argument that remittance with a Form 4868 was a "deposit"); *Ertman v. U.S.*, 165 F.3d 204, 208 (2d Cir. 1999) (finding "as a matter of law, Form 4868 remittance is a payment and not a deposit"); *VanCanagan v. U.S.*, 231 F.3d 1349, 1353 (Fed. Cir. 2000) (finding that remittance with

2597662.4  110222-71675

extension request was payment of tax); *Dantzler v. U.S.*, 133 F.3d 1247 (11th Cir. 1999) (finding that remittance with Form 4868 is payment, not deposit, of tax liability).  None of the narrow circumstances where the IRS accepts "deposits" (as opposed to "tax payments") from taxpayers are present here.  *See, e.g.*, *VanCanagan*, 231 F.3d at 1353 (limiting "deposits" to remittances invoking specific procedure, with taxpayer reserving right to contest alleged liability).  There is no doubt that the debtors' remittances to the IRS with the Insiders' extension requests were payments of tax, due at the time the Insiders' tax returns were due, regardless of extension.

Notwithstanding the wealth of authority that the recipient of funds in satisfaction of a liability is a "transferee," the IRS argues that a recipient does not exercise dominion "just because a debt is being paid."  Opp. Br. at 16-17.  First, the IRS's argument is not based upon any authority interpreting Section 550(a), but instead relies solely upon *Commissioner v. Indianapolis Power & Light Co.*, 493 U.S. 203 (1990), which addressed the standard for recognition of revenue for income tax purposes.  Even to the extent that such standard is the same as the Ninth Circuit's definition of "transferee" in Section 550, the IRS's reliance upon *Indianapolis Power* omits critical distinctions between the utility security deposits at issue there and the tax payments at issue here.

In *Indianapolis Power*, the Supreme Court found that deposits required as security for timely payment of utility bills were not taxable income to a utility company at the time the deposits were made.  In reaching this conclusion, the Supreme Court emphasized that the deposits were expressly intended to ensure prompt payment of future bills, were required to be two times the estimated utility bill, were booked by the utility company as liabilities, and, after a statutory period, unclaimed deposits escheat to the state.  Taken together, the Supreme Court found that the circumstances of these deposits was such that, at the time it received the deposits,

3

the utility company's right to keep the money was dependent upon a number of facts, including the customer's choice as to whether it would purchase any electricity at all.  493 U.S. at 210-11. Unlike in *Indianapolis Power*, the IRS did not receive a "deposit" intended as security to ensure timely payments of a future bill.  The IRS received a tax payment made expressly in the amount of anticipated liability and in satisfaction of a then-due tax liability, and the IRS has not even attempted to argue that it incurs a liability when tax payments are received.  In *Indianapolis Power*, the Supreme Court found that the utility did not exercise dominion because the customer making a deposit "retain[ed] the right to *insist upon repayment* in cash."  *Id.* at 212 (emphasis added).  A taxpayer making a tax payment retains no such right.  These differences are stark, and to the extent *Indianapolis Power* is instructive at all to the application of the Ninth Circuit's dominion test, those differences render *Indianapolis Power* entirely consistent with the Trustee's argument that the IRS exercises dominion and is a transferee when it receives a tax payment.

### 2.    A Taxpayer Does Not Have an "Account" with the IRS

Much of the IRS's opposition is premised upon the false notion that a taxpayer has an "account" with the IRS.  The fact that the IRS records a taxpayer's income tax liabilities and payments (and may refer to it internally as an "account") does not render that record an "account" like a checking or savings account held at a bank.  When a bank receives a deposit, there is an immediate debtor-creditor relationship between the bank and the customer, with the bank being the debtor.  The relationship between the IRS and a taxpayer is fundamentally different.  When a taxpayer makes a tax payment to the IRS, to the extent that there is a debtor-creditor relationship between the two, the IRS is the creditor.  When a bank receives a deposit, it has an immediate liability to the account holder in the full amount of the deposit.  When the IRS receives a tax payment, it receives revenue and no immediate liability to the taxpayer.  The IRS's attempt to focus on how an entity tracks debits and credits misses the focus of the "dominion"

4

inquiry, namely the recipient's role in connection with the receipt of a debtor's funds.

The IRS's comparison of regulations governing banks and the IRS is likewise unavailing. *See* Opp. Br. at 15.  After a certain number of years of inactivity, a bank account escheats to the state.  When the statutory period for refund claims expires, the IRS retains the tax payments without the risk of any potential, future claim for a refund.   The IRS suggests that, in both instances, the taxpayer/bank customer's claim is extinguished, but this argument focuses on the wrong question.  The fact that a bank account escheats to the state emphasizes the deposit bank's fundamental lack of dominion over a deposit account because the unclaimed funds never become the bank's property, whereas the IRS has a beneficial interest in the payments upon receipt.

Given the fundamental differences between bank deposits and tax payments, the IRS's reliance upon *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), is based upon an inherently flawed analogy.  *Strumpf* holds that a bank's temporary refusal to honor a debtor's withdrawal demand was not an act to collect a setoff in violation of the automatic stay.  *Strumpf* simply does not speak to the status of any entity as a transferee.  While *Strumpf's* description of the relationship between a deposit bank and account holder is consistent with the undisputed proposition that a deposit bank is not a Section 550 transferee, *Strumpf* does not inform the "dominion" analysis for banks as lenders, let alone the IRS.

### 3.      The Potential For A Refund Claim Does Not Deprive the IRS of Dominion

The fact that a taxpayer may make a refund claim for three years after filing a return does not deprive the IRS of dominion over tax payments upon receipt.  The IRS's attempt to liken its potential, contingent, and possibly disputed obligation to make a refund for an overpayment to a deposit bank's immediate contractual obligation to repay an account holder is a false analogy. *See* Mov. Br. at 12 & n.11.  A taxpayer is owed no duty of repayment and only has a right to

5

claim a refund.  And, that right to claim a refund of a tax overpayment is not immediately ripe (a taxpayer may make a refund claim only at the end of the tax year), is limited in time (it may only be made three years after the tax return was due or two years after the payment was made, *see* 26 U.S.C. § 6511 (a)), and is limited in scope (a refund may not exceed tax paid within a given period, *see* 26 U.S.C. § 6511(b)(2)(A)).  A bank account holder is not subject to any such restrictions.  Immediately after a cash deposit, the account holder may withdraw all of the funds deposited.

The IRS's argument that it lacks dominion because regulations require that it refund a tax overpayment to an eligible taxpayer is belied by *Incomnet*.  In *Incomnet*, the Ninth Circuit held that regulations governing the terms of disbursements did not deprive the entity of obtaining dominion when it received the funds.   463 F.3d at 1066-67.   Indeed, the Ninth Circuit emphasized that the entity exercised dominion because, when it received the funds from the debtors, there were *no restrictions placed by the debtors* on the entity's use of the funds.  *Id.* at 1075.  That hallmark of the lack of dominion is likewise not present here, as the debtors placed no restrictions on the IRS's use of the funds when the tax payments were made.

The IRS also attempts to reframe the Ninth Circuit's dominion standard as determined by an entity's "discretion" over the use of funds.  That is not the Ninth Circuit's standard.  In any event, the IRS *has* the necessary discretion after accepting tax payments.  While the IRS focuses on its lack of discretion to issue a refund of a tax overpayment once the IRS finally determines the amount of any overpayment, *see* 26 U.S.C. § 6402 (a) ("shall . . . refund any balance), the IRS has discretion, for example, in determining whether to retain any portion of the overpayment as a credit against another tax liability, *id.* ("In the case of any overpayment, the Secretary, *may*

credit. . .").  *See, e.g., Steinberg v. Comm'r*, 19 Fed. Appx. 498 (9th Cir. 2001); *Kalb v. U.S.*, 505 F.2d 506, 509 (2d Cir. 1974).

The Transfers avoided as intentionally fraudulent were tax payments from the debtors to the IRS for the benefit of the Insiders.  The purpose of those Transfers was to pay income taxes due by the Insiders when the payments were made.  Those transactions were complete when the Transfers were accepted by the IRS and deposited into the general treasury.  The question of dominion is determined at the time a transfer is made, and, the IRS does not even attempt to answer who, if not the IRS, had dominion over the Transfers when the debtors made them or cite any authority for the view that events subsequent to a transfer can deprive a recipient of dominion.  *See* Mov. Br. at 14-15.  The IRS's later determination as to the issuance (or denial) of refunds or credits are distinct transactions.  Thus, rather than viewing the IRS's subsequent issuance of refunds over a course of years as part of the original fraudulent transfers from the debtors for the payment of the Insiders' tax liabilities, the Refunds were separate transfers.

**B.    The IRS Exercised Dominion, at the Latest, When the IRS Assessed the Insiders' Income Tax Liability**

At best, the United States lacks dominion over tax payments it receives with an extension request only until the IRS receives a filed return and assesses tax liability.  *See* Mov. Br. at 6-12.  Courts agree that even if a recipient is not a transferee when it first receives a debtor's funds, the recipient becomes a transferee when it credits the funds against a liability.  *See, e.g., Bonded Fin.*, 838 F.2d at 892, 895-96; *In re Nat'l Consumer Mortg.*, 2013 WL 6844494, *4 (D. Nev. Dec. 20, 2013).  Thus, even if the IRS did not exercise dominion when it accepted the Transfers, it exercised dominion when the IRS first assessed tax liability for each tax year, and the only refunds that are beyond the Trustee's recovery from the United States are those made at the time of those assessments.  The vast majority of Refunds to the Insiders were issued well after the IRS

initially assessed income tax liability, and only $339,732 in tax overpayments were refunded when the IRS assessed tax liability.

### C. *Merit Management* Does Not Interpret "Transferee" In Section 550(a).

Contrary to the IRS's suggestion, the Supreme Court's recent ruling in *Merit Management Group Ltd. V. FTI Consulting*, __ U.S. __, 138 S.Ct. 883 (Feb. 27, 2018), does not touch upon the proper interpretation of "transferee" in Section 550(a). Indeed, *Merit Management* is not about recovery at all, but whether a particular transaction is protected from avoidance under 11 U.S.C. § 546 (e). Section 546(e) excludes from a trustee's avoidance powers "a transfer that is a margin payment. . . or a settlement payment. . .made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency. . ." To accomplish its stock purchase, Valley View transferred $16.5 million to Merit (the shareholder of the acquired entity) through two financial institutions. When Valley View filed for bankruptcy, the trustee sought to avoid Valley View's $16.5 million transfer to Merit, and Merit argued that Section 546(e) excepted the transfer from avoidance because the transaction *involved* an intermediate "settlement payment" to a "financial institution."

There is no doubt that the financial intermediaries that served as escrow agents in Valley View's purchase of stock are precisely the type of mere conduits protected from *recovery* under Section 550(a). The question presented in *Merit Management* was whether the transfer (from Valley View to Merit for the purchase of stock) was protected from avoidance because the transaction was a securities transaction using a financial intermediary. The Supreme Court found that the involvement of a financial intermediary did not insulate Valley View's transfer to Merit from the trustee's avoidance powers.

8

To the extent that it is relevant at all here, the *Merit Management* Court's focus upon the transfer avoided is consistent with the Trustee's ability to recover from the United States the full amount of the Transfers.  Here, the Trustee has avoided Transfers from the debtors to the IRS for the payment of taxes.  There was no intermediary in those transactions.  The United States attempts to redefine the Transfers by positioning itself as an intermediary via the Refunds in a transfer from the debtors to the Insiders.  *See* Opp. Br. at 3 (arguing that it "was a mere component part to the larger fraud pursued by the owners, and not the transferee to the funds it refunded to the owners/taxpayers").  For purposes of interpreting Section 546(e), *Merit Management* instructs courts to remain focused on the transfer sought to be avoided.  The IRS offers no reason to disregard this guidance and permit it to redefine the avoided transfer for the purpose of recovery.

### D.    Applying the Mere Conduit Doctrine Here Is Contrary to Bankruptcy Policy

While the IRS continues to argue that Congress did not intend for the IRS to have to "disgorge twice," Opp. Br. at 3, the IRS fails to even acknowledge, let alone refute, that Section 550(a) contemplates otherwise.  By permitting a trustee seek recovery against either an initial or subsequent transferee, Congress has expressly contemplated that an initial transferee can be strictly liable for the value of fraudulently transferred assets that the transferee no longer possesses, subject only to the limit that the trustee's claim may only be satisfied once.  *See* Mov. Br. at 17-18.  The United States' predicament – potentially being liable to the Trustee even though it refunded portions of the Transfers – is not a result of the IRS's lack of dominion over the Transfers when it received them but rather a result of the IRS having accepted the Insiders' income tax payments *from a third party* (the debtor) yet nonetheless returning a portion of those payments to the Insiders.  Because neither the estate nor the creditors have been made whole by the Refunds, the only interpretation of Section 550(a) that restores the estate is to find the IRS

liable, in full, for the Transfers. *See In re Acequia*, 34 F.3d 800, 812 (9th Cir. 1994) (noting that purpose of Section 550 is to make the estate whole by restoring it to the financial condition as if the transfer had not occurred). The IRS's suggestion that the Insiders are the only appropriate avenue of recovery is also inconsistent with Section 550. While the Insiders remain strictly liable as the persons for whose benefit the Transfers were made, Section 550(a) permits the Trustee to recover from either them or the initial transferee in order to maximize recovery for the estate. *See, e.g., In re Walldesign, Inc.*, 872 F.3d 954, 965 (9th Cir. 2017).

## II.    THE TRUSTEE DOES NOT INTEND TO RECEIVE A DOUBLE RECOVERY

The Trustee acknowledges that he has received $1.3 million that was seized by the United States from Swenson that the government traced to certain income tax refunds. When the United States withdrew its objection to the seized funds being released to the Trustee, the Trustee agreed that, if he recovered the Refunds from the United States in this action, the Trustee would credit $1.3 million towards satisfaction of such *judgment*. Because that Stipulation is phrased in terms of a credit against a *judgment*, the Trustee's motion seeks an additional *judgment* for the recovery of the portion of the Transfers refunded to the Insiders, against which the agreed-upon credit would apply. If this court were to subtract the seized funds before entering an additional judgment, the Trustee would be subject to an argument by the United States that it is entitled to a credit against said *judgment*, per the language of the Stipulation. Thus, while the Trustee does not intend to obtain a double recovery, the United States is likewise entitled to a $1.3 million credit only once. Because the Stipulation is phrased in terms of a credit against a *judgment,* any additional judgment entered by the Court must either be in the full amount of the additional recovery to which the Trustee is entitled so that credit referred to in the Stipulation is made against the proper amount or expressly state that the amount of the additional judgment already reflects the credit to which the United States is entitled under the Stipulation.

## CONCLUSION

For the reasons set forth below and in the Trustee's moving brief, the Trustee respectfully requests that this Court deny the United States' mere conduit defense as a matter of law and enter an additional judgment against the United States in the amount of $3,620,718.78 consistent with the Ninth Circuit's interpretation of Section 550(a).


**DUKE SCANLAN AND HALL, PLLC**

By: /s/ Keely E. Duke
Keely E Duke (ISB No. 6044)
Kevin A. Griffiths (ISB No. 8187)
1087 W. River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone:  (208) 342-3310
ked@dukescanlan.com
kag@dukescanlan.com


**GIBBONS P.C.**

By: /s/ Jennifer A. Hradil
Mark B. Conlan (ISB No. 9028)
Jennifer A. Hradil (admitted pro hac vice)
Brett S. Theisen (admitted pro hac vice)
One Gateway Center
Newark, NJ 07102-5310
Telephone:  (973) 596-4500
Facsimile:  (973) 595-0545
mconlan@gibbonslaw.com
jhradil@gibbonslaw.com
btheisen@gibbonslaw.com

*Counsel for Plaintiff, James R. Zazzali,*
*as Litigation Trustee for the DBSI Estate*
*Litigation Trust*

2597662.4   110222-71675

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 29th day of March, 2018, I caused the following parties or counsel to be served by e-mail, and/or filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

U.S. Department of Justice
Ari D. Kunofsky
Email: ari.d.kunofsky@usdoj.gov
Kieran.O.Carter@usdoj.gov
eastern.taxcivil@usdoj.gov

/s/Keely E. Duke
Keely E. Duke
Attorney for Plaintiff

2597662.4   110222-71675